# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

EDUARDO SALAZAR, WALTER
ORTIZ, GREGORIO LUX, GUSTAVO
CUJLUJ, SANTOS TEPAZ,
RUBELINO HERNANDEZ, WILLIAM
SIR,  JERONIMO TOJ GRANADOS,
MARVIN LOPEZ, IMELDA LOZANO,
CESAR TOJ MICOLAX, CLADIO
RUIZ, CARLOS IXEN CHOC, CESAR
MARROQUIN, BERULO JIMENEZ,
BERNARDO LEMUS, ANTONIO
FIGUEROA, HUGO LOPEZ, SAMUEL
GARCIA, LUIS LOPEZ,  JOSE DANY
LOPEZ, SERGIO VERGARA and JOSE
DAMASIO LOPEZ, on behalf of
themselves and all other similarly
situated individuals,

      Plaintiffs,

vs.

AGRIPROCESSORS, INC.,

      Defendant.

No. 07-CV-1006-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    *RELEVANT PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   *PARTIES' ARGUMENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

IV.   *"COLLECTIVE" VS. "CLASS" ACTIONS* . . . . . . . . . . . . . . . . . . . . . **5**

V.    *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
      A.    *Rule 12(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

B.      *The Existence of Supplemental Jurisdiction* . . . . . . . . . . . . . . . . . **9**

C.      *Whether the Court Should Exercise its Supplemental Jurisdiction* . . **11**

      *1.*    *A split in the persuasive authorities* . . . . . . . . . . . . . . . . **12**

              *a.*    *The District of Columbia Circuit Court of Appeals:*
                      *Lindsay* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

              *b.*    *The Third Circuit Court of Appeals:* **De Asencio** . . . . **14**

      *2.*    *The court's finding* . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

VI.     **DISPOSITION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **22**

## I. INTRODUCTION

The matter before the court is Defendant AgriProcessors, Inc.'s ("AgriProcessors") Motion to Dismiss Class Action Claims ("Motion to Dismiss") (docket no. 22).

## II. RELEVANT PROCEDURAL HISTORY

On March 27, 2007, Plaintiffs Eduardo Salazar, Walter Ortiz, Gregorio Lux, Gustavo Cujluj, Santos Tepaz, Rubelino Hernandez, William Sir, Jeronimo Toj Granados, Marvin Lopez, Imelda Lozano, Cesar Toj Micolax, Cladio Ruiz, Carlos Ixen Choc, Cesar Marroquin, Berulo Jimenez, Bernardo Lemus, Antonio Figueroa, Hugo Lopez, Samuel Garcia, Luis Lopez, Jose Dany Lopez, Sergio Vergara and Jose Damasio Lopez ("Plaintiffs") filed a two-count "Complaint—Class Action" ("Complaint"). Plaintiffs seek unpaid wages and unpaid overtime wages. In Count I, Plaintiffs seek relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* ("FLSA Claim"). In Count II, Plaintiffs seek relief for "all class members" and allege violations of the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code § 91A.1, *et seq.* ("IWPCL Claim"). In the IWPCL Claim, Plaintiffs seek to represent "at least 1500 present and former production and support employees" of AgriProcessors's meat processing facility in Postville, Iowa ("Postville Facility"). Complaint (docket no. 2), at ¶¶ 1, 2, 34 and 61-68.

Case 2:07-cv-01006-LRR   Document 32   Filed 10/22/07   Page 2 of 22

They seek class certification pursuant to Federal Rule of Civil Procedure 23, an injunction, and damages for, among other things, lost wages. *Id.* at ¶ 68. On June 7, 2007, AgriProcessors filed an answer and affirmative defenses.

On July 30, 2007, AgriProcessors filed the instant Motion to Dismiss. On August 14, 2007, Plaintiffs filed a "Brief in Opposition to Defendant's Motion to Dismiss Class Action Claims" ("Resistance") (docket no. 24). On August 24, 2007, AgriProcessors filed "Defendant's Reply Brief in Support of Motion to Dismiss" ("Reply") (docket no. 28).

On October 17, 2007, the court held a hearing on the Motion to Dismiss ("Hearing"). Attorney Brian P. McCafferty represented Plaintiffs. Attorneys Jay Eaton and Jeffery A. Meyer represented AgriProcessors. The court finds the Motion to Dismiss fully submitted and ready for decision.

### III. PARTIES' ARGUMENTS

In the Motion to Dismiss, AgriProcessors relies on Federal Rule of Civil Procedure 12(b)(6) and seeks to dismiss the class action portion of the IWPCL Claim based on Plaintiffs' failure to state a claim upon which relief can be granted. AgriProcessors argues that "[t]he opt-out procedure for Plaintiffs' Rule 23 class action in Count II is inconsistent with the opt-in procedure of Plaintiffs' FLSA collection action in Count I." Motion to Dismiss (docket no. 22), at ¶ 6. It argues that, "FLSA collective actions for overtime pay" require Plaintiffs to affirmatively opt in to the claim. Motion to Dismiss (docket no. 22-2), at 4 (citing 29 U.S.C. § 216(b)). It argues that the FLSA opt-in procedure is "opposite" the Rule 23 opt-out procedure, which requires class members to affirmatively opt out of the class. *Id.* at 6. AgriProcessors argues that the FLSA Claim and the IWPCL Claim are incompatible due to the divergent required procedures, and it states that dismissal of the class action claim is required.

3

AgriProcessors goes on to argue that, after the court dismisses the class action portion of the IWPCL Claim, it should decline to invoke its supplemental jurisdiction over the claims of the named Plaintiffs under the IWPCL. It argues that, due to the procedural conflict between the FLSA Claim and the IWPCL Claim, there are "exceptional circumstances" which should "compel[ the c]ourt to decline supplemental jurisdiction over the class action claims." Motion to Dismiss (docket no. 22-2), at 8.

In their Resistance, Plaintiffs classify AgriProcessors's "main issue" as whether the court has supplemental jurisdiction over the IWPCL Claim. *See* Resistance (docket no. 24), at 5. Plaintiffs rely on *Lindsay v. Government Employees Insurance Company*, 448 F.3d 416 (D.C. Cir. 2006), and argue that this court should follow the District of Columbia Circuit Court of Appeals, which held that Rule 23 opt-out claims could be litigated simultaneously with FLSA collective action opt-in claims. Plaintiffs also cite several recent district court decisions that support their position.

Plaintiffs additionally argue that the court should examine the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, and its legislative history. Plaintiffs argue that, through the CAFA, "Congress has placed the adjudication of state law class claims largely in the hands of federal courts and . . . federal courts have been granted broader original jurisdiction over state law class claims." Resistance (docket no. 24), at 10. They point to the legislative history of the CAFA, which provides, in part: "the Committee firmly believes that such cases properly belong in federal court." *Id.* at 11.

Finally, Plaintiffs argue that AgriProcessors's reliance on *Bartleson v. Winnebago Industries, Inc.*, 219 F.R.D. 629 (N.D. Iowa 2003) (Bennett, C.J.) is misplaced, because it was overruled *sub silentio* by *Exxon Mobil Corporation v. Allapattah Services, Inc.*, 545 U.S. 546 (2005). Plaintiffs argue that the Supreme Court in *Exxon* emphatically rejected the notion "that each claim of the individual members of a permissive class are distinct cases and controversies; and that each member or claim must separately support federal

4

jurisdiction." Resistance (docket no. 24), at 14. Therefore, Plaintiffs ask the court to reject AgriProcessors's argument that the court can only exercise supplemental jurisdiction over the claims of Plaintiffs who have opted in to the case pursuant to the FLSA Claim.

In its Reply, AgriProcessors argues that Plaintiffs' discussion is misplaced, because AgriProcessors's Motion to Dismiss was made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It cites a recent case, *Ramsey v. Ryan Beck & Company, Inc.*, Civil Action No. 07-635, 2007 WL 2234567 (E.D. Pa. Aug. 1, 2007), in which a district court dismissed state law class claims under Rule 12 because they were inherently incompatible with the FLSA collective action. AgriProcessors further argues that CAFA is not applicable here, because CAFA does not provide original federal court jurisdiction for Plaintiffs' IWPCL Claim.

### IV. "COLLECTIVE" VS. "CLASS" ACTIONS

At the outset, it is crucial to note the distinction between a FLSA *collective* action and a Rule 23 *class* action. The distinction is sometimes blurred. "The Federal Rules of Civil Procedure, including Rule 23 authorizing class actions, apply in all civil actions except when Congress has decided otherwise." 5 *Moore's Federal Practice* § 23.04 (3d ed. 2007) [hereinafter "*Moore's*"] (citing Fed. R. Civ. P. 1 and *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)). Under Rule 23, class members are bound by the lawsuit's results "unless they have opted out of the action." *Id.*; *see also* Fed. R. Civ. P. 23(c)(2)(B) (explaining that the notice to class members must include the fact "that the court will exclude from the class any member who requests exclusion" and "the binding effect of a class judgment on class members under Rule 23(c)(3)").

"Class actions may not be maintained under Rule 23, however, when Rule 23's procedures are inconsistent with the substantive statute under which the action is brought or when the substantive statute provides an alternative means for obtaining class or group relief." *Moore's*, § 23.04 (footnote omitted). Section 216(b) of the FLSA is one of the

5

statutes which sets out an "alternative means" for collective actions. *Id.* Congress expressly limited FLSA collective actions by requiring plaintiffs affirmatively to opt in to the claim. It provides, in part: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Therefore, "Rule 23 is inapplicable to proceedings under the FLSA." *Moore's*, § 23.04. A collective action under the FLSA is not a traditional "class" action.

The Eighth Circuit Court of Appeals determined that Rule 23 is irreconcilable with § 216(b). *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). The Eighth Circuit Court of Appeals stated, in part:

> *There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by [§ 216(b)].* In a Rule 23 proceeding, a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit. *Under [§ 216(b)], on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class; that is, given his written, filed consent.*
>
>             \*     \*     \*
>
> Rule 23(c) provides for 'opt out' class actions. [Section 216(b)] allows as *class members* only those who 'opt in.' These two types of class actions are mutually exclusive and irreconcilable. . . ."

*Schmidt*, 527 F.2d at 536 (quoting *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (omission and emphasis added in *Schmidt*)); *see also LaChapelle*, 513 F.2d at 289 (stating that § 216(b) and Rule 23 are "mutually exclusive and irreconcilable"). *Cf. Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997) (discussing the difference between the

6

opt-in requirement of § 216(b) and the opt-out provision of Rule 23, but concluding that a written consent from a former employee was unnecessary under § 216(b), because the Secretary of Labor brought the suit under § 216(c) on behalf of the former employee). Congress fashioned the FLSA's opt-in language to "prohibit what precisely is advanced under Rule 23—a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members." *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003).

With this background in mind, the court turns to consider whether Plaintiffs' collective and class actions can go forward in one lawsuit.

## V. ANALYSIS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes the district court to dismiss a claim if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In assessing a motion to dismiss, the court is required to view the allegations in the complaint in the light most favorable to the nonmoving party. *In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir. 2005). The court must accept all the factual allegations in the plaintiff's complaint as true. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing in part *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)). "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).[1]

---

[1] The parties cite the traditional Rule 12(b)(6) test that provides that the court should "dismiss the case only when it appears beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief." *Mo. River Sys. Litig.*, 418 F.3d at 917 (internal quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007), a case involving a claim under the Sherman Act, the Supreme Court abrogated *Conley v. Gibson*, 355 U.S. 41 (1957), and "retired" the "no set of facts" language. *Twombly*, 127 S. Ct. at 1968-69 (referring to the

(continued…)

7

To prove their IWPCL Claim, Plaintiffs must prove that AgriProcessors "intentionally failed to pay [Plaintiffs] wages . . . ." Iowa Code § 91A.8. The term "wages" is defined broadly in Iowa Code section 91A.2(7) and includes "[l]abor or services rendered by an employee, whether determined on a time, task, piece, commission or other basis of calculation." *Id.* § 91A.2(7)(a). Moreover, the IWPCL "is remedial in nature and is meant to be liberally construed." *Kartheiser v. Am. Nat'l Can Co.*, 271 F.3d 1135, 1136 (8th Cir. 2001) (citing *Hornby v. Iowa*, 559 N.W.2d 23, 26 (Iowa 1997)).

The Complaint alleges that AgriProcessors failed to pay Plaintiffs for all of the hours they worked in AgriProcessors's Postville Facility. Plaintiffs allege that, under AgriProcessors's wage compensation system, production-line employees "are paid only during the time that they are present on the actual assembly line under a system known as 'gang time' or 'line time.'" Complaint (docket no. 2), at ¶ 44. To work on the assembly line, AgriProcessors's employees are required to wear special personal protective equipment ("PPE"), including plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs,

---

[1](…continued)

"no set of facts" language in *Conley* and explaining that, "after puzzling the profession for 50 years, this famous observation has earned its retirement"). However, it is unclear whether the old test has been replaced by a new rule or whether the holding in *Twombly* applies to non-antitrust cases. *See generally Brown v. Kerkhoff*, No. 4:06-cv-00342-JEG, 2007 WL 2481422, *40-45 (S.D. Iowa Aug. 23, 2007) (Gritzner, J.) (discussing *Twombly* and adopting an approach which requires the plaintiff to "provide 'enough factual matter (taken as true) to suggest' unlawful or otherwise actionable conduct" (quoting *Twombly*, at 1965)); *Hogue v. Palisades Collection, LLC*, 494 F. Supp. 2d 1043, 1046 & 1053 (S.D. Iowa 2007) (Pratt, J.) (denying a motion to dismiss in a Fair Debt Collection Practices Act case and stating that, "[i]n addressing a motion to dismiss under [Rule 12(b)(6), th[e court] must follow the new standard of review articulated by the United States Supreme Court in [*Twombly*]"). Because the parties have not discussed *Twombly* and because the court would deny the Motion to Dismiss under both the "no set of facts" test and the *Twombly* test, the court need not decide whether *Twombly* is applicable to this wage payment collection case.

8

coveralls, eye protection and other protective equipment. Plaintiffs allege that AgriProcessors does not pay its production workers for time that they are required to spend preparing to work on the line and for time they are required to spend after they complete their line work. That is, Plaintiffs allege that they were not paid for time they spent donning; doffing; obtaining and sanitizing sanitary and safety equipment and gear; obtaining tools, equipment and supplies necessary for the performance of their work; working steels; and walking between work sites. Plaintiffs allege that they performed such work activities during paid breaks, during unpaid lunch breaks and before and after paid work periods. Plaintiffs allege that they spent as much as thirty to thirty-five minutes each day on such uncompensated work activities.

Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the court finds that Plaintiffs have stated a claim under the IWPCL sufficient to withstand the Motion to Dismiss. *See Westerfield v. Wash. Mut. Bank*, No. 06-CV-2817, 2007 WL 2162989, *2 (E.D.N.Y. July 26, 2007) (unpublished) ("There is no legal doctrine, of which the [c]ourt is aware, that permits the [c]ourt to dismiss a cause of action solely on the grounds that it is 'inherently incompatible' with another action before it."). Therefore, the court shall deny the Motion to Dismiss insofar as AgriProcessors seeks to dismiss the IWPCL Claim under Rule 12(b)(1) or 12(b)(6).

## B. The Existence of Supplemental Jurisdiction

Under § 1367, the court has the authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim. 28 U.S.C. § 1367(a). Section 1367 provides:

> **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case

9

> or controversy under Article III of the United States
> Constitution. Such supplemental jurisdiction shall include
> claims that involve the joinder or intervention of additional
> parties.

*Id.* (emphasis in original).

"Claims within the action are part of the same case or controversy if they derive from a common nucleus of operative fact." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (citations and quotations omitted). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The FLSA and the IWPCL are parallel federal and state laws, and each of Plaintiffs' claims address whether current and former employees of AgriProcessors should be paid for "time spent preparing, donning, doffing, obtaining and sanitizing sanitary and safety equipment and gear, obtaining tools, equipment and supplies necessary for the performance of their work . . . ." Complaint (docket no. 2), at ¶ 4. The court, therefore, finds that Plaintiffs sufficiently demonstrated a common nucleus of operative fact. The court has supplemental jurisdiction over the IWPCL Claim, pursuant to § 1367(a).

The court next turns to consider whether the exception in § 1367(a) applies. Section 1367(a) provides that supplemental jurisdiction exists "[e]xcept . . . as expressly provided otherwise by Federal statute . . . ." 28 U.S.C. § 1367(a). The federal statute at issue here—the FLSA, specifically § 216(b)—neither expressly prohibits the exercise of supplemental jurisdiction over state law claims of opt-out class members nor mentions supplemental jurisdiction. *See Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416, 422 (D.C. Cir. 2006) (stating that "not only does section 216(b) not expressly prohibit the exercise of supplemental jurisdiction over the state law claims of opt-out class members, it includes no mention of supplemental jurisdiction at all"); *see also Breuer v. Jim's*

10

*Concrete of Brevard, Inc.*, 538 U.S. 691, 694-95 (2003) (explaining that § 216(b) does not prohibit removal under 28 U.S.C. § 1441, in part because removal is not mentioned in the statute). Therefore, the court finds that § 1367(a)'s "or as expressly provided otherwise by Federal statute" exception is not applicable here.

### C. Whether the Court Should Exercise its Supplemental Jurisdiction

Next, the court will turn to consider whether this is an instance where the court should decline to exercise supplemental jurisdiction. *See Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980) (explaining that "even if the court has the power in a constitutional sense to hear the entire case, it need not do so for 'pendent jurisdiction is a doctrine of discretion, not of plaintiff's right'" (quoting *Gibbs*, 383 U.S. at 726)). The factors that the court should consider under the pendent jurisdiction doctrine are "judicial economy, convenience, fairness and comity . . . ." *Grain Land Coop v. Kar Kim Farms, Inc.*, 199 F.3d 983, 993 (8th Cir. 1999); *see also Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006) (listing the same factors). The statute provides, in relevant part:[2]

> **(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> **(1)** the claim raises a novel or complex issue of State law,
>
> **(2)** the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

---

[2] The court determined that the exception in § 1367(b) does not apply, because the original jurisdiction in this case is based on § 1331, or federal question jurisdiction. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction founded solely on § 1332 of this title [diversity jurisdiction], the district courts shall not have supplemental jurisdiction under [§ 1367(a)] over claims by plaintiffs . . . ."); *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994) (determining that § 1367(b) did not apply because "the jurisdictional basis for [the plaintiff's] § 1983 action [wa]s the presence of a federal question").

11

**(3)** the district court has dismissed all claims over which it has original jurisdiction, or

**(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis in original). "This subsection 'plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein.'" *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287 (8th Cir. 1998) (quoting *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994)).

The court turns to consider the applicability of the "exceptional circumstances" provision in § 1367(c)(4)— the only subsection of § 1367(c) that AgriProcessors argues applies. It argues that the "exceptional circumstances" are the conflict between the FLSA's opt-in requirement and Rule 23's opt-out requirement.

### 1. *A split in the persuasive authorities*

The Eighth Circuit Court of Appeals has not yet addressed the issue at hand. Only two Circuit Courts of Appeals have ruled on the issues presented in the Motion to Dismiss: the District of Columbia Circuit Court of Appeals and the Third Circuit Court of Appeals. Therefore, the court shall look to those persuasive authorities for guidance and summarize each of the relevant opinions:

### a. *The District of Columbia Circuit Court of Appeals:* Lindsay

In *Lindsay v. Government Employees Insurance Company*, 448 F.3d 416 (D.C. Cir. 2006), the District of Columbia Circuit Court of Appeals dealt with a FLSA opt-in claim and an opt-out class claim under a New York Minimum Wage Act. 448 F.3d at 418. The district court denied the employees' motion for class certification on the state law claim and concluded "that the FLSA class certification procedure requiring all class members to affirmatively opt in precluded it from exercising supplemental jurisdiction over those state

Case 2:07-cv-01006-LRR   Document 32   Filed 10/22/07   Page 12 of 22

law claimants who did not affirmatively join the FLSA claim." *Id.* The District of Columbia Circuit Court of Appeals reversed and remanded, determining, in part, that the opt-in certification provision of the FLSA did not expressly prohibit the exercise of supplemental jurisdiction over the New York claims of opt-out class members. *Id.* at 421-22 (citing 28 U.S.C. §§ 1367(a)). However, it held that the district court could exercise supplemental jurisdiction over the state-law claims of class members who opted out of the FLSA claim. *Id.* at 424. It stated, though, that, on remand, "the district court remains free to consider whether it 'may decline to exercise' supplemental jurisdiction under 28 U.S.C. § 1367(c)." *Id.* In dicta, the District of Columbia Circuit Court of Appeals stated that the state law claims were not novel or complex under § 1367(c)(1) and they would not substantially predominate over the federal claim under § 1367(c)(2). *Id.* at 425. It declined to determine whether substantial predomination under § 1367(c)(2) could result from "'the disparity in numbers'" between those opting into the FLSA claim and those state-law-claim class members, because, in *Lindsay,* "the two classes [we]re almost identical in size." *Id.* at 425 n.12 (questioning the conclusion reached by the Third Circuit Court of Appeals in *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003)). Finally, the District of Columbia Circuit Court of Appeals instructed the district court as to whether it should exercise supplemental jurisdiction on remand:

> On remand, the district court may consider whether "exceptional circumstances" exist and whether "there are other compelling reasons for declining jurisdiction" under section 1367(c)(4). In determining whether there are "other compelling reasons," the district court must balance "economy, convenience, fairness, and comity," as the Supreme Court instructed in *Gibbs*. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Gibbs*, 383 U.S. at 726-27). It may not, however, use subsection (c)(4) to conclude that section 216(b)'s opt-in provision ousts the court of supplemental jurisdiction over the state law class of those claimants who have not joined the FLSA claim. *We do not*

13

> view the difference between the opt-in procedure provided by
> section 216(b) for FLSA claims and the opt-out procedure for
> state law claims provided by Rule 23 as fitting the "exceptional
> circumstances" / "other compelling reasons" language of
> section 1367(c)(4).

*Lindsay*, 448 F.3d at 425 (emphasis added).

### b.    *The Third Circuit Court of Appeals:* **De Asencio**

In *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301 (3d Cir. 2003), the Third Circuit Court of Appeals reversed and remanded a FLSA action and determined that the district court erred by exercising supplemental jurisdiction over a Pennsylvania Wage Payment and Collection Law ("Pennsylvania Law") class action. 342 F.3d at 303-04. The facts in *De Asencio* are similar to the allegations in the instant case: hourly employees at two chicken-processing plants in Pennsylvania alleged that their employer owed them wages for time they spent donning, doffing and sanitizing prior to each shift, after each shift and before and after each break. *Id.* at 304.

Despite the factual similarities, the *De Asencio* case is procedurally distinct from the instant case. In *De Asencio*, the plaintiffs filed suit in August of 2000 under both the FLSA and the Pennsylvania Law. *Id.* In October of 2000, they "sought collective treatment of their FLSA action under the federal statute's opt-in provisions[,]" but they did not seek class certification of the Pennsylvania Law action. *Id.* (citing 29 U.S.C. § 216(b)). On January 31, 2001, the district court permitted the plaintiffs to send out opt-in notices to prospective plaintiffs under the FLSA action. *Id.* On March 15, 2001, the employer mailed out 3,400 notices, and, on June 21, 2001, it filed a motion to close the class period. *Id.* at 304-05. The plaintiffs resisted the motion for two reasons: (1) numerous prospective opt-in plaintiffs had not received the notices because the employer mailed them to the wrong addresses and (2) the employer had "improperly discouraged its current and former employees from participating in the action." *Id.* at 305. On July 24, 2001, the district court closed the class, resulting in a class of 504 current and former

14

employees, and it rejected the plaintiffs' arguments. *Id.* At the time of the appeal, the class consisted of 447 people, because 57 of the employees were dismissed at the summary judgment stage of the case. *Id.* On December 31, 2001, discovery closed, and, on February 22, 2002, the plaintiffs filed a motion to certify the state-law action under Rule 23. *Id.* The main issue in the motion to certify was "whether the plaintiffs could bring a [Pennsylvania Law] action because they had not pleaded a contract claim, the predicate for a [Pennsylvania Law] action." *Id.* It was not until May 14, 2002, that plaintiffs argued for the first time that their Pennsylvania Law claim was "grounded in an implied contract between [the employer] and its hourly employees." *Id.* On July 17, 2002, the district court certified the state-law opt-out class under Rule 23, and the class consisted of 4,100 individuals, including 700 employees who had been hired after the March 15, 2001 FLSA notices were mailed-out. *Id.* The employer filed an interlocutory appeal to contest the district court's exercise of supplemental jurisdiction and class certification. *Id.*

In *De Asencio*, the Third Circuit Court of Appeals determined that supplemental jurisdiction existed under § 1367, and it focused on the exceptions in § 1367(c)(1) and (c)(2). *Id.* at 309. Focusing on the terms of proof and the scope of the issues raised in each of the claims, the Third Circuit Court of Appeals determined that the state-law claim would substantially predominate over the FLSA claim, due to the novel and complex issues of state law involved. *Id.* at 309-10. The Third Circuit Court of Appeals explained the complexity of the state-law claim was due to three main factors: (1) the Pennsylvania Law "provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages," (2) the *De Asencio* plaintiffs had no explicit contract or collective bargaining agreement with the employer and the employees were at-will employees, and (3) the issue of whether an implied contract could give rise to a claim under the Pennsylvania Law and the issue of whether the Pennsylvania Law pertained to at-will employees were both issues of first impression. *Id.* at 309-11. Therefore, the Third

Case 2:07-cv-01006-LRR   Document 32   Filed 10/22/07   Page 15 of 22

Circuit Court of Appeals in *De Asencio* determined that the state-law claim would "require additional testimony and proof to substantiate beyond that required for the FLSA action." *Id.* at 310.

Additionally, the Third Circuit Court of Appeals explained the legislative history of the FLSA, and it stated that Congressional intent was "another countervailing interest in relegating the [state-law] claims . . . to state court . . . ." *Id.* at 306-07 & 310.[3] It focused on "Congress's express preference for opt-in actions" for the FLSA action and stated that "Congress's interest in these matters is manifest." *Id.* at 310. Finally, the disparity in the number of opt-in plaintiffs and state-law class members gave the Third Circuit Court of Appeals pause. *Id.* It stated:

> In terms of the number of plaintiffs, the sheer difference in numbers between the two prospective classes, 447 as opposed to 4,100, may constitute substantial predomination by the [Pennsylvania Law] action under [§] 1367.

\* \* \*

---

[3] Congress promulgated the FLSA in 1938. *See* 29 U.S.C. § 201 ("This chapter may be cited as the 'Fair Labor Standards Act of 1938'."). In 1947, Congress passed the 1947 Portal-to-Portal Pay Act ("Pay Act"), 29 U.S.C. §§ 251 to 262, in response to judicial interpretations of the FLSA. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25-26 (2005) (explaining that, after the decision in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), "Congress passed the [Pay Act] amending certain provisions of the FLSA"). Powerful policy considerations led Congress to amend the FLSA in 1947. *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *see also Marquez v. Partylite Worldwide, Inc.*, No. 07 C 2024, 2007 WL 2461667, *3-5 (N.D. Ill. Aug. 27, 2007) (Kendall, J.) (engaging in an extensive discussion of the Pay Act and the history of Rule 23). The Supreme Court explained that the Pay Act was enacted, in part, because Congress was "responding to excessive litigation spawned by plaintiffs lacking personal interest in the outcome." *Hoffman-LaRoche*, 493 U.S. at 173. The Pay Act abolished representative actions by plaintiffs who had no claim of their own and it implemented "the requirement that an employee file a written consent" in order to join a FLSA collective action. *Id.*

16

> Predomination under [§] 1367 generally goes to the type of claim, not the number of parties involved. But the disparity in numbers of similarly situated plaintiffs may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog.

*Id.* at 310 & 311. In conclusion, the Third Circuit Court of Appeals stated:

> Here, the inordinate size of the state-law class, the different terms of proof required by the implied contract state-law claim, and the general federal interest in opt-in wage actions suggest the federal action is an appendage to the more comprehensive state action.

*Id.* at 312. The *De Asencio* court was also "mindful of the unique circumstances surrounding [the] litigation," namely, the procedural history of the case that spanned between August of 2000 to May of 2002. *Id.*

### 2. The court's finding

The court is convinced by the rationale of the District of Columbia Circuit Court of Appeals in *Lindsay*, and it finds that *De Asencio* is distinguishable from the instant case. Here, there is no novel issue of state law in the IWPCL Claim, nor is there a difference in the terms of proof required by the FLSA Claim and the IWPCL Claim. There are no issues of first impression in the IWPCL Claim that the Iowa courts would be better suited to answer. The court cannot speculate as to the size of the prospective classes at this early stage of the case.[4] "[T]he substance and basis" of the FLSA Claim and the IWPCL Claim

_____

[4] Currently, there are twenty-three Plaintiffs involved in the FLSA Claim, and the Complaint alleges that there are approximately 1,500 former and current employees of AgriProcessors that could be part of the IWPCL Claim class. In the future, it may be appropriate for the court to re-examine the number of FLSA opt-in plaintiffs versus the number of the IWPCL class members to determine if the sheer difference in numbers constitutes substantial predomination under § 1367(c)(2). However, such an examination

(continued...)

17

"is virtually indistinguishable," that is, the claims involve "identical facts and highly similar legal theories." *Bamonte v. City of Mesa*, No. CV 06-01860-PHX-NVW, 2007 WL 2022011, *3 & *4 (D. Ariz. July 10, 2007); *see also Lindsay*, 448 F.3d at 425 (stating that a state-law claim "essentially replicate[d]" the FLSA claim).

Moreover, the court is not convinced that Congress's intent in 1947 requires the court to refuse to exercise supplemental jurisdiction over the class action portion of the IWPCL Claim. *See Bamonte*, 2007 WL 2022011, at *4 ("The issue of congressional intent with respect to the FLSA is not an issue of judicial economy, convenience, fairness to the parties, or federal-state comity. As a result, it may not serve as a 'compelling reason' for declining supplemental jurisdiction."). *But see Otto v. Pocono Health Sys.*, 457 F. Supp. 2d 522, 523-24 (M.D. Pa. 2006) ("Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claim in their own right and freeing employers from the burden of representative actions." (Quotations and citations omitted.)); *Herring v. Hewitt Assocs., Inc.*, No. 06-267 (GEB), 2006 WL 2347875, *2 (D.N.J. Aug. 11, 2006) (unpublished) (same); *Moeck v. Gray Supply Corp.*, No. 03-1950, 2006 WL 42368, *5 (D.N.J. Jan. 5, 2006) (unpublished) (same); *see also Williams v. Trendwest Resorts, Inc.*, No. 2:05-CV-0605-RCJ-LRL, 2007 WL 2429149, *4 (D. Nev. Aug. 20, 2007) (dismissing the plaintiff's state law claims and allowing the FLSA claim because allowing both claims would allow the plaintiff to "circumvent the restrictive opt-in requirements of the FLSA" where 1,578 notices were sent to potential class members and only 194 class members affirmatively opted-in); *Ramsey v. Ryan Beck & Co., Inc.*, Civil Action No. 07-635, 2007 WL 2234567, *2 (E.D. Pa. Aug. 1, 2007) (collecting cases and stating that "permitting a FLSA collective action to be litigated with a Rule 23 state-law class action would 'nullify

---

[4](…continued)
would be premature at this stage of the litigation.

Case 2:07-cv-01006-LRR   Document 32   Filed 10/22/07   Page 18 of 22

Congress's intent in crafting . . . § 216(b) and eviscerate the purpose of § 216(b)'s opt-in requirement.'" (quoting *Otto*, 457 F. Supp. 2d at 524)); *Aquilino v. Home Depot U.S.A., Inc.*, Civil Action No. 04-cv-4100 (PGS), 2006 WL 2023539, *3 (D.N.J. July 18, 2006) (unpublished) ("The Congressional intent for an opt-in procedure pursuant to FLSA has been established for more than 60 years. This intent 'would largely be thwarted if a plaintiff were permitted to back door the shoe horning in of unnamed parties' pursuant to an exercise of supplemental jurisdiction." (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004)); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577-78 (N.D. Ill. 2004) (declining to certify a Rule 23 class and finding "that allowing [the plaintiff] to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress's intent to limit these types of claims to collective actions"). Since 1947, Congress has done nothing to add language to the FLSA to expressly prohibit the exercise of supplemental jurisdiction over claims based on state wage and hour laws. For example, Iowa promulgated the IWPCL in 1975, *see* Iowa Code § 91A.1 (1975), but, in the thirty-two years since its passage, Congress has refrained from enacting a law which provides for FLSA preemption of this state counterpart.

The court recognizes that this case presents unique procedural challenges, and the class notices may be confusing to potential class members if care is not taken in crafting the notice language. *See Riddle v. Nat'l Sec. Agency, Inc.*, No. 05 C 5880, 2007 WL 2746597, at *4 (N.D. Ill. Sept. 13, 2007) (stating that the substantial "risk of confusion" of the putative class members "alone would not preclude class certification," but that it is an appropriate consideration in determining whether a Rule 23 class should be certified); *McClain*, 222 F.R.D. at 577 ("[I]t may be confusing for a potential class member to receive a notice indicating that they must opt out of some claims and opt in to others." (citing *De La Fuente v. FPM Ipsen Heat Treating, Inc.*, No. 02 C 50188, 2002 WL 31819226, *1 (N.D. Ill. Dec. 16, 2002))). However, the court finds it is appropriate to

19

exercise supplemental jurisdiction at this time. The court is well-equipped to manage a case involving a FLSA collective action and a state-law class action. *See Lindsay*, 448 F.3d at 418; *see also Brickey v. Dolencorp, Inc.*, No. 06-CV-6084L, 2007 WL 2460613, *1-2 (W.D.N.Y. Aug. 29, 2007) ("[T]he complexities of Rule 23 and FLSA hybrid actions are a challenge that the federal judiciary, and properly instructed juries, are generally well-equipped to meet."). The court is not alone in its finding that it is appropriate to exercise supplemental jurisdiction over the IWPCL Claim at this time. *See, e.g., Ellison v. Autozone Inc.*, No. C06-07522 MJJ, 2007 WL 2701923, *2-3 (N.D. Cal. Sept. 13, 2007) (denying a motion to strike state law claims due, in part, to the fact that the case was at an early stage); *Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW, 2007 WL 2462150, *4 (N.D. Cal. Aug. 29, 2007) (denying the defendant's motion to dismiss the state law claims); *Brickey*, 2007 WL 2460613, at *1-2 (rejecting defendants' argument that the court should dismiss the plaintiffs' Rule 23 claims on supplemental jurisdiction grounds, and declining to dismiss the state law claims under Federal Rule of Civil Procedure 12(c)); *Goldman v. RadioShack Corp.*, No. Civ.A. 2:03-CV-0032, 2003 WL 21250571, *5 (E.D. Pa. Apr. 16, 2003) (unpublished) (conditionally certifying a FLSA collective action and stating that it would "exercise [its] discretion to assume supplemental jurisdiction pursuant to § 1367(a) over the related state law claims and the proposed Rule 23 opt-out class"). Other district courts have proceeded well beyond the stage of exercising supplemental jurisdiction and have certified both FLSA collective actions and Rule 23 classes involving claims of violations of state wage payment collection laws. *See Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 494 (E.D. Cal. 2006) (certifying both a FLSA collective class and a Rule 23 class); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 268 (D. Conn. 2002) (certifying a Rule 23 class alleging violations of the Connecticut Minimum Wage Act where the court had previously certified a FLSA collective action in the same suit); *Trotter v. Perdue Farms, Inc.*, No. CIV.A.99-893-RRM, 2001 WL 1002448, *1-3

20

(D. Del. Aug. 16, 2001) (unpublished) (granting plaintiffs' motion for "collective action designation" under the FLSA and certifying a Rule 23 class where plaintiffs made allegations under the Employee Retirement Income and Security Act, the FLSA and the wage and hour laws of Delaware, Kentucky, Maryland, North Carolina and South Carolina; and making the FLSA a Rule 23 "subclass"); *Brzychnalski v. UNESCO, Inc.*, 35 F. Supp. 2d 351, 353-54 (S.D.N.Y. 1999) (granting plaintiffs leave to prosecute a FLSA claim as a collective action and certifying a class under Rule 23 and the New York Minimum Wage Act while noting that "the creation of two classes in this case is not an impediment to the exercise of supplemental jurisdiction over the [state-law] claims"); *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D. Wash. 1989) (certifying a FLSA collective action and a Rule 23 class).[5]

After considering "judicial economy, convenience, fairness and comity," the court finds it appropriate to exercise supplemental jurisdiction and retain the IWPCL Claim. *Grain Land Coop*, 199 F.3d at 993. Retaining the IWPCL Claim promotes judicial economy, because it avoids the substantial problem of parallel lawsuits in state and federal court and avoids duplication of work and waste of judicial resources. Additionally, it is far more convenient for the parties to have their nearly identical claims resolved in one forum, despite the logistical problems inherent in such a lawsuit.

---

[5] Nothing in this order exercising supplemental jurisdiction should be read as an indication that the class action portion of the IWPCL Claim will automatically proceed to trial. Plaintiffs still must hurdle each of the requirements of Rule 23. *See Marquez v. Partylite Worldwide, Inc.*, No. 07 C 2024, 2007 WL 2461667, *6 (N.D. Ill. Aug. 27, 2007) (Kendall, J.) (denying employer's motion to strike the plaintiff's state law class action allegations pursuant to Federal Rule of Civil Procedure 12(f), but cautioning that the plaintiff must meet Rule 23(b)(3)'s superiority requirement before the court would certify an opt-out class and noting that, due to Congress's "addition of the written consent requirement to the FLSA" in 1947, "an opt-out class action is not likely to be the superior method for resolving [the plaintiff's] state-law claims that [the defendant] failed to make overtime payments").

Case 2:07-cv-01006-LRR    Document 32    Filed 10/22/07    Page 21 of 22

## VI.  DISPOSITION

For the foregoing reasons, the court hereby **ORDERS**:

(1)     AgriProcessors's Motion (docket no. 22) is **DENIED**; and

(2)     At this time, the court finds that it is proper to exercise supplemental jurisdiction under 28 U.S.C. § 1367, but the court reserves the right to revisit the issue of supplemental jurisdiction at a later stage of the case.

**IT IS SO ORDERED.**

**DATED** this 22nd day of October, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA